[Civ. No. 24212. First Dist., Div. Four. August 2, 1968.]

MARY GRASSO, Plaintiff and Appellant, v. McDONOUGH POWER EQUIPMENT, INC., Defendant and Respondent.

Magana, Olney, Levy, Cathcart & Gelfand, Ellis J. Horvitz and Jerry D. Whatley for Plaintiff and Appellant.

Dryden, Harrington & Swartz and Vernon G. Foster for Defendant and Respondent.

DEVINE, P. J.—The question is whether a person who has been sentenced to a life term in a state prison, but whose civil rights have been restored for the purpose of bringing a particular action, is entitled to tolling of the statute of limitations during the time of his or her disability.

Mary Grasso, plaintiff and appellant, was sentenced to a life term of imprisonment. At the time of the commencement of this action on June 4, 1965, her term had not been fixed at any term of years by the California Women's Board of Terms and Parole. On April 2, 1965, the board restored to her such civil rights as were necessary to retain an attorney and to file suit against McDonough Power and Equipment, Inc. for personal injury resulting from an incident which had occurred on October 25, 1956. The incident is described in the plaintiff's complaint. On that date, plaintiff alleges, she was assigned to operate a lawn mower which had been manufactured by defendant. She brought the mower to a stop and applied the brakes so that she might clear some hoses which were in the way. After some time the mower started forward, ran over plaintiff and caused injuries which resulted in the amputation of her right leg. The mower had been manufactured negligently. The negligence was the proximate cause of the injuries. We give these as recitals of fact because, demurrer having been sustained without leave to amend on the ground of the statute of limitations only, and judgment of dismissal having been made, we must consider the charging allegations to be true.

Section 352 of the Code of Civil Procedure reads: "If a person entitled to bring an action, mentioned in chapter three of this title, be, at the time the cause of action accrued, either: 1. Under the age of majority; or, 2. Insane; or, 3. Imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life; or, 4. A married

woman, and her husband be a necessary party with her in commencing such action; the time of such disability is not a part of the time limited for the commencement of the action.'' This section was enacted in 1872 and has not been amended insofar as it applies to persons serving sentences.

■ Literally, the section tolls the statutes of limitations only for persons who are serving terms less than for life. It was on this basis that the demurrer was sustained, upon defendant's pleading of section 340 of the Code of Civil Procedure, which gives the limitation of actions for personal injuries as one year.

But appellant contends that the section ought not to be given a literal interpretation because a life term in 1872 was a very different thing from a ''life term'' now, and for many years past, in that a life term usually does not reach its termination with the end of the prisoner's natural life as it did in the nineteenth century. Moreover, section 2601 of the Penal Code expressly allows the Adult Authority to restore to a person sentenced to life imprisonment such rights as the authority deems proper except the right to act as a trustee, hold public office, exercise the privilege of an elector or give a general power of attorney. Section 6043 of the Penal Code gives the same powers to the Women's Board of Terms and Parole respecting women prisoners as are given to the Adult Authority respecting males.

We hold that a liberal and fair interpretation of the statute requires the effectuation of the restoration to plaintiff of the right to file the particular action.

When section 352 of the Code of Civil Procedure was enacted in 1872, a life sentence was literally a life sentence. There was no indeterminate sentence law until 1917. (Stats. 1917, ch. 527, p. 665.) Parole for life termers was unknown until 1913. (Stats. 1913, p. 1048.) In 1872 and for decades thereafter, the Governor had the power to grant pardons under the California Constitution of 1850, article V, but beyond this there was no hope for the life termer. His condition was the same as that of a person at present who has received commutation of the death penalty to life imprisonment upon condition that he never be paroled. (See *In re Collie*, 38 Cal.2d 396 [240 P.2d 275].)

The person serving a possible life term in recent years may serve less time in prison than does one whose maximum term is a number of years. Indeed, as was pointed out in *People* v.

*Pineda,* 238 Cal.App.2d 466, 471-472 [47 Cal.Rptr. 879], one who has been convicted three times of certain felony offenses under the narcotics laws must serve a minimum of 15 years, parole being forbidden, while life termers convicted of first degree murder serve (taking the median) 150 months. (Data obtained from California Prisoners, A Summary of Felon Prisoners and Parolees (1963), published by the California Department of Corrections, p. 105.) In 1872 there was small reason to provide a tolling of the statute of limitations for a life term convict. He could not personally enjoy the fruits of litigation. He would never be outside the prison walls on parole. In the nineteenth century to have given an exemption from the statute of limitations to one who had no limitation on his confinement save that of death, would have been to bestow a sardonic favor.

The purpose of the indeterminate sentence law is ''to put before the prisoner great incentive to well-doing in order that his will to do well should be strengthened and confirmed by the habit of well-doing.'' (*In re Lee,* 177 Cal. 690, 692 [171 P. 958].) The object of parole also is to mitigate the rigor of the former penitentiary system. (*People* v. *Denne,* 141 Cal.App.2d 499, 507-508 [297 P.2d 451].) When these two beneficent plans were put into operation, the life termer as well as the prisoner for a term of years could look forward to rehabilitation and reentry into normal society. One adjunct of his new status (new in that it is of the twentieth century) as one who may be released from the prison walls, is the possibility of his realizing redress for wrongs done to him. Recognizing this, the Legislature enacted section 2601 of the Penal Code, which reads as follows: ''A person sentenced to imprisonment in the state prison for life is thereafter deemed civilly dead. But the Adult Authority may restore to such person during his imprisonment such civil rights as the authority may deem proper, except the right to act as a trustee, or hold public office, or exercise the privilege of an elector, or give a general power of attorney. This section shall not be construed so as to deprive such person of his right to inherit real and personal property in accordance with the laws of this State.'' The second sentence of this section, the critical one in the present case, first appeared in an amendment to former section 674 of the Penal Code in 1941. (Stats. 1941, ch. 489, p. 1798.)

Now if section 352 of the Code of Civil Procedure is to be

read literally and if the words therein, "for a term less than for life," are to be interpreted as applying not only to the very limited class of prisoners serving life terms without possibility of parole by reason of commutation of death sentences, but to all life termers, obviously some meritorious actions must meet their end upon a plea of the statute of limitations. We think that a fair reading of both statutes precludes such a meaning. The reason for excluding life termers from the lifting of the statute of limitations, valid as it was in 1872, has been largely lost in the developments of the century which has passed, except possibly as the reason may still exist for that limited class of persons who cannot be paroled or released. Because the reason has virtually disappeared, it is possible that if we were to consider section 352 of the Code of Civil Procedure alone, we should have to do so by modifying our interpretation of "a term less than for life," either by rules of statutory construction or by considering constitutional grounds such as the equal protection of the laws. But we need not interpret the section by itself. We must also give a fair and liberal construction to section 2601 of the Penal Code. In so doing, we find that plaintiff's action is not barred.

Having considered the ameliorated status of a life termer, we turn to a brief consideration of the position of the defendant. There is no reason why the defendant should be the beneficiary of the status of a person whom that defendant has injured. Since the limitation of action for personal injuries is the short time of one year, and many life termers so injured might have to wait several years before being restored to civil rights, a potential defendant would, if respondent's position were correct, gain a benefit from an offense which was committed by the prisoner, not against the defendant but against the People of the State.

But respondent argues that the life termer may be expected to have a relatively long term of imprisonment and that it is reasonable to deny the tolling of the statute of limitations as to him because otherwise the potential defendant must make his investigation and look to his defense long after the happening which gave rise to the litigation. As pointed out above, other convicts have long terms; and the statute is tolled for the benefit of minors and incompetent persons, sometimes for many years.

Appellant points out that section 2601 of the Penal Code, in its first sentence, refers to civil death of a life term prisoner,

whereas section 2600 refers to suspension of civil rights of other prisoners. But whatever the difference in status may be before restoration, it seems to be equal in effect to the extent to which restoration is granted as to both types of prisoners, because the restoration provisions of both statutes are identical.

Besides, the words "civil death" are not to be taken as denoting absolute legal extinction of the person. "The concept of civil death has been severely criticized and the pattern of decisions reveals that the courts are increasingly reluctant to strip a prisoner of his civil rights on the basis of this medieval doctrine. (See comments, 26 So.Cal.L.Rev. 425, and 50 Harv.L.Rev. 968, and cases therein cited.) It is evident that the courts have construed the statutory exceptions to civil death or the suspension of civil rights with liberality and it is likely that they will continue to do so." (27 Ops.Cal. Atty. Gen. 243.)

The judgment of dismissal is reversed, and the court is directed to overrule the demurrer insofar as it is based upon the statute of limitations.

Rattigan, J., and Christian, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 25, 1968.