Filed 3/21/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES R. AUSTIN, | B277546 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC521033 |
| v. | |
| JOHN MICHAEL MEDICIS et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge. Affirmed.

James R. Austin, in pro. per., for Plaintiff and Appellant.

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer, and David B. Owen, for Defendants and Respondents.

# INTRODUCTION

To prevail in a civil case, the plaintiff must assert his claims before the statute of limitations expires. But the statutory deadline may be extended—or tolled—if, among other reasons, the plaintiff is "imprisoned on a criminal charge" when the cause of action accrues. Plaintiff and appellant James R. Austin asserts breach of contract and related claims stemming from acts and omissions by defendants and respondents John Michael Medicis, Michael C. Eberhardt, Michael C. Eberhardt PLC, and Law Offices of Eberhardt and Medicis (collectively, Medicis), retained counsel who represented Austin before trial in his criminal case. As all of Austin's causes of action accrued while he was in pretrial custody at the Los Angeles County Jail, we are asked to decide whether the controlling statutes of limitations were tolled during this period.

As a matter of first impression, we hold that a plaintiff is "imprisoned on a criminal charge" within the meaning of Code of Civil Procedure section 352.1 if he is serving a term of imprisonment in the state prison. Because none of the statutes of limitations at issue here were tolled as a result of Austin's pretrial incarceration in the county jail, the trial court properly sustained Medicis's demurrer without leave to amend on statute of limitations grounds. We therefore affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

On May 14, 2009, Austin retained Medicis to represent him in an investigation into allegations that he molested his stepdaughter. At that time, Austin agreed to pay Medicis $6,000 to represent him through arraignment. Austin was arraigned on June 2, 2009. The day before arraignment, Austin and Medicis

entered into a second fee agreement in which Austin agreed to pay Medicis $7,500 to represent him through the preliminary hearing.

Following the preliminary hearing, Austin was charged by information with four counts of oral copulation with a child under 16 (Pen. Code, § 288a, subd. (b)(2)); four counts of oral copulation with a 14-year-old child (Pen. Code, § 288a, subd. (c)(2)); five counts of lewd act on a 14- or 15-year-old child (Pen. Code, § 288, subd. (c)(1)); and one count of attempted unlawful sexual intercourse with a child under 16 (Pen. Code, § 664/261.5, subd. (d)).

On June 20, 2009, Austin and Medicis entered into a third fee agreement, in which Austin agreed to pay Medicis a "minimum fee of $57,500" to represent him through trial. The fee included $7,500 to hire a motions expert to prepare a motion to suppress various pretrial statements. In July 2009, the trial court denied the motion to suppress at two contested hearings.

In August 2009, Austin retained an additional lawyer, Peter Swarth, to assist Medicis. But when Medicis failed to appear for a pretrial hearing on September 22, 2009, Austin learned Medicis had abandoned him. The following week, Austin wrote to Medicis to request signed copies of the fee agreements and a refund of unearned trial fees. On October 9, 2009, Medicis offered to return $20,000 of the final $50,000 Austin had paid him. It appears Austin rejected the offer.

A jury subsequently convicted Austin of all charges, and on January 11, 2011, Austin was transferred to state prison. Austin appealed, and this court affirmed on September 12, 2013.

On September 11, 2013, Austin filed the original complaint in the present case. The operative second amended complaint,

filed March 29, 2016, identifies seven causes of action: breach of express contract/rescission, breach of implied contract/warranty, unlawful rescission of contract, actual fraud, constructive fraud, elder abuse/undue influence, and negligent infliction of emotional distress. In substance, Austin's suit rests on the claim that Medicis did not provide the full range of professional services for which he was paid.

Medicis demurred to all causes of action. First, he argued Austin failed to plead factual innocence of the underlying criminal charges. Second, Austin's claims were all barred because he had not obtained post-conviction relief. Third, Austin's claims were all subject to the one-year statute of limitations for legal malpractice (Code Civ. Proc.,[1] § 340.6) and were time-barred. Fourth, Austin failed to state sufficient facts to constitute a cause of action.

The court sustained the demurrer without leave to amend. The court concluded that the one-year statute of limitations for claims of attorney malpractice (§ 340.6) applied to all causes of action other than actual fraud, and that Austin's claims accrued on September 22, 2009, the date Austin learned Medicis had abandoned him. Assuming the limitations period was tolled for two years under section 352.1, subdivision (a), the period expired on September 22, 2012, and the complaint filed on September 11, 2013, was untimely. Accordingly, the court sustained the demurrer to the first, second, third, sixth, and seventh causes of action.

---

[1]    All undesignated statutory references are to the Code of Civil Procedure.

The court sustained the demurrer to the fourth and fifth causes of action without leave to amend on the ground that Austin had failed to state sufficient facts to support causes of action for fraud or to allege those facts with the required specificity. Finally, the court sustained the demurrer to all causes of action without leave to amend on the ground that Austin failed to plead actual innocence or post-conviction exoneration.

The court subsequently entered a judgment of dismissal, and Austin filed a timely notice of appeal. (See *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 129 [prison delivery rule].)

## DISCUSSION

Austin contends the trial court erred in sustaining the demurrer without leave to amend as to all of his causes of action because his claims are not time-barred and he was not required to plead actual innocence. We conclude the court properly sustained the demurrer without leave to amend based on each cause of action's statute of limitations. As we must affirm the judgment if it is correct on any ground stated in the demurrer, we do not reach Austin's additional claims of error. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

### 1.    Standard of Review

"When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Courts must also consider judicially noticed matters. (*Ibid.*) In addition, we give the complaint a reasonable interpretation, and read it in context. (*Ibid.*) If the trial court has sustained the

5

demurrer, we determine whether the complaint states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. (*Ibid.*) If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. (*Ibid.*) The plaintiff has the burden of proving that an amendment would cure the defect. (*Ibid.*)" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "If a complaint is insufficient on any ground specified in the demurrer, the order sustaining the demurrer must be upheld even though the particular ground upon which the court sustained it may be untenable. [Citation.]" (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 440.)

In light of these principles, the difficulties in demurring on statute of limitations grounds are clear: "(1) trial and appellate courts treat the demurrer as admitting all material facts properly pleaded and (2) resolution of the statute of limitations issue can involve questions of fact. Furthermore, when the relevant facts are not clear such that the cause of action might be, but is not necessarily, time-barred, the demurrer will be overruled. [Citation.] Thus, for a demurrer based on the statute of limitations to be sustained, the untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed. [Citation.]" (*Coalition for Clean Air v. City of Visalia* (2012) 209 Cal.App.4th 408, 420, fns. omitted; § 430.30, subd. (a).)

## 2. Applicable Statutes of Limitations

To determine which statute of limitations governs a given cause of action, we must first " 'identify the nature of the cause of action, i.e., the "gravamen" of the cause of action.' [Citation.] The nature of the cause of action and the primary right involved, not the form or label of the cause of action or the relief demanded, determine which statute of limitations applies. [Citations.]" (*Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 412.) The parties agree that the one-year limitations period in section 340.6 applies to the sixth and seventh causes of action, for elder abuse/undue influence and negligent infliction of emotional distress, and that the three-year period in section 338 applies to the fourth cause of action, for actual fraud.[2] They appear to disagree, however, about which limitations period applies to the first, second, and third causes of action, for breach of contract and rescission, and the fifth cause of action, for constructive fraud.

Medicis argues that all causes of action other than actual fraud stem from allegations of attorney malpractice and are thus subject to the one-year limitations period of section 340.6. On that basis, he asserts that Austin's causes of action accrued on September 22, 2009, when the representation ended, and as Austin did not file the complaint until September 11, 2013, they are time-barred. Austin appears to argue that the contract claims were governed by the four-year limitations period in section 337; the constructive fraud claim was governed by the three-year

---

[2]     Section 340.6, subdivision (a), expressly excludes causes of action based on "actual fraud" by an attorney.

7

period in section 338; and in any event, the limitations periods for all causes of action were tolled by his incarceration.

To resolve these interlocking issues, we first determine which statute of limitations applies to Austin's contract and constructive fraud causes of action. We conclude section 340.6 governs those claims. Next, we address accrual dates. We conclude the actual fraud claim accrued on October 9, 2009, and the remaining causes of action accrued on September 22, 2009. Then, we consider Austin's tolling argument and conclude the limitations periods were not tolled by his pretrial incarceration.[3] Accordingly, Austin was required to assert his actual fraud claim on or before October 9, 2012, and was required to assert his remaining claims on or before September 22, 2010. As Austin did not file the complaint in this case until September 11, 2013, the court properly concluded all causes of action were time-barred.

### 2.1. Section 340.6

Section 340.6, subdivision (a), governs any "action against an attorney for a wrongful act or omission, other than for actual

---

[3]    In the second amended complaint, Austin alleges, for each cause of action, that he suffered a physical disability from March 7, 2012, until September 12, 2012. For the sixth and seventh causes of action, Austin alleges he suffered from a mental disorder and was under psychiatric care while he was incarcerated in Los Angeles County Jail. But he has not argued on appeal that either of these circumstances tolled the statutes of limitations. As such, we limit our tolling discussion to Austin's claim that his pretrial incarceration tolled the relevant statutory periods. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656 [matters not properly raised will be deemed forfeited]; *Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1267 ["the in propria persona litigant is held to the same restrictive rules of procedure as an attorney"].)

8

fraud, arising in the performance of professional services … ." While the statute plainly applies to malpractice claims, it also governs "claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services. In this context, a 'professional obligation' is an obligation that an attorney has by virtue of being an attorney, such as fiduciary obligations, the obligation to perform competently, the obligation to perform the services contemplated in a legal services contract into which an attorney has entered, and the obligations embodied in the State Bar Rules of Professional Conduct." (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1236–1237 (*Lee*).) Put another way, since the "attorney-client relationship often requires attorneys to provide nonlegal professional services such as accounting, bookkeeping, and holding property in trust," the statute's reach extends beyond legal malpractice to the performance of services that do not require a law license. (*Id.* at p. 1237.)

On the other hand, "[m]isconduct does not 'aris[e] in' the performance of professional services for purposes of section 340.6(a) merely because it occurs during the period of legal representation or because the representation brought the parties together and thus provided the attorney the opportunity to engage in the misconduct." (*Lee*, *supra*, 61 Cal.4th at p. 1238.) Thus, the statute "does not bar a claim arising from an attorney's performance of services that are not 'professional services,' meaning 'services performed by an attorney which can be judged against the skill, prudence and diligence commonly possessed by other attorneys.' [Citation.]" (*Id.* at p. 1237.) The ultimate "question is not simply whether a claim alleges misconduct that entails the violation of a professional obligation. Rather, the

question is whether the claim, in order to succeed, necessarily depends on proof that an attorney violated a professional obligation as opposed to some generally applicable nonprofessional obligation." (*Id.* at p. 1238.)

### 2.2. Section 340.6 applies to the contract and constructive fraud causes of action.

Austin's first, second, third, and fifth causes of action for breach of express and implied contract, unlawful rescission of contract, and constructive fraud plainly encompass more than attorney negligence. Nevertheless, we conclude they "depend on proof that an attorney violated a professional obligation in the course of providing professional services." (*Lee, supra,* 61 Cal.4th at pp. 1236–1237.)

The gist of these causes of action is that Medicis did not provide the full range of professional services for which he was paid, and those he did perform were not of the quality or skill for which he was paid. Because this amounts to a fee dispute concerning Medicis's obligations *as an attorney*, these causes of action are governed by section 340.6, subdivision (a). (*Lee, supra,* 61 Cal.4th at pp. 1236–1237.)

That conclusion extends to the fifth cause of action, for constructive fraud. To be sure, section 340.6, subdivision (a), exempts claims of "actual fraud" from its limitations period—but the exemption does not extend to claims of constructive fraud. (*Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 69–70.) As such, the fifth cause of action is also governed by section 340.6.

### 3. Accrual Dates

"The applicable statute of limitations does not begin to run until the cause of action accrues, that is, ' "until the party owning

10

it is entitled to begin and prosecute an action thereon." ' [Citation.]" (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487.) Thus, to determine when the statutes of limitations ended, we must first address when they began. We conclude the cause of action for actual fraud accrued on October 9, 2009, and the other causes of action accrued on September 22, 2009.

" 'Promissory fraud' is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. [Citations.] [¶] An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a [written] contract. [Citations.] In such cases, the plaintiff's claim does not depend upon whether the defendant's promise is ultimately enforceable as a contract." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; Civ. Code, § 1572, subd. (4) [one form of actual fraud is a "promise made without any intention of performing it."].) A cause of action for fraud accrues when the aggrieved party discovers the facts constituting the fraud. (*Lee v. Escrow Consultants, Inc.* (1989) 210 Cal.App.3d 915, 921.) At that point, the plaintiff has three years to bring an action. (§ 338, subd. (d).)

The essence of Austin's claim of actual fraud is that, to induce Austin to enter into a legal services contract, Medicis presented himself as a highly skilled "top drawer" attorney specializing in "criminal sex cases" and promised to provide legal services such as pretrial investigation and trial defense that he did not intend to perform.

Medicis contends "Austin knew by September 2009, when the Medicis defendants were relieved as his counsel, that the

11

Medicis defendants had supposedly not performed as promised. Thus, Austin had three years, until September 2012, to sue the Medicis defendants for fraud." Austin alleges that he discovered the fraud on October 9, 2009, when he learned Medicis would not return the $50,000 flat fee Austin paid him for trial services. Therefore, unless a tolling provision applied, Austin had until October 9, 2012, to assert his claim of actual fraud.

Turning to the remaining claims, an "action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services" is timely only if filed "within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." (§ 340.6, subd. (a); see *Adams v. Paul* (1995) 11 Cal.4th 583, 589, fn. 2 ["discovery of the negligent act or omission initiates the [one-year] statutory period"].)

In the first, second, third, fifth, sixth, and seventh causes of action for breach of express and implied contract, unlawful rescission of contract, constructive fraud, elder abuse/undue influence, and negligent infliction of emotional distress, Austin alleges Medicis failed to perform the full scope of contracted-for services with the skill of a "top drawer" attorney. The parties agree that Austin discovered these facts when Medicis ended the attorney-client relationship by failing to appear in court on September 22, 2009. Consequently, for purposes of evaluating whether the demurrer was properly sustained without leave to amend on statute of limitations grounds, we assume all of the causes of action except for actual fraud accrued on September 22,

2009. Therefore, unless a tolling provision applied, Austin had until September 22, 2010, to assert these claims.

### 4. Tolling of the Limitations Period

Austin argues the court erred in sustaining the demurrer without leave to amend on statute of limitations grounds because the statute was tolled for four years under section 340.6, subdivision (a)(4), while he was incarcerated. As a matter of first impression, we conclude Austin's pretrial incarceration did not toll either the section 338 limitations period for the actual fraud claim or the section 340.6 limitations period for the remaining claims because Austin was not "imprisoned on a criminal charge" when the causes of action accrued.

The section 340.6 limitations period is tolled if, among other reasons, the "plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action." (§ 340.6, subd. (a)(4).) The courts have construed the reference to legal disability in section 340.6, subdivision (a)(4), as importing the generally-applicable tolling rules in former section 352; as it relates to imprisonment, former section 352 has since been amended and reenacted as section 352.1. (See *Bledstein v. Superior Court* (1984) 162 Cal.App.3d 152, 163–166; *Brooks v. Mercy Hospital* (2016) 1 Cal.App.5th 1 [applying judicial constructions of former section 352 to section 352.1].) Hence, section 352.1 applies to section 340.6 via subdivision (a)(4). Section 352.1 applies directly to section 338 because a claim of actual fraud is an "action" mentioned in Chapter 3 of the Code of Civil Procedure. Accordingly, our analysis of section 352.1 applies to all of Austin's causes of action.

Section 352.1, subdivision (a), provides, "If a person entitled to bring an action … is, *at the time the cause of action*

*accrued*, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, *not to exceed two years*." (Italics added.) Austin alleges that he was incarcerated in the Los Angeles County Jail between June 2, 2009, and January 10, 2011, and in state prison from January 10, 2011, through November 2012, a period of approximately three years, five months.

Therefore, under section 352.1, the limitations period applicable to each of Austin's causes of action would have been extended by two years if—*but only if*—the cause of action accrued while he was "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life … ." (§ 352.1, subd. (a); see § 357 [tolling for legal disabilities limited to disabilities existing when the cause of action accrues].) As discussed, Austin's causes of action accrued on September 22, 2009, and October 9, 2009, while he was in pretrial custody in the Los Angeles County Jail. Thus, section 352.1 tolling only applies if pretrial incarceration constitutes "imprison[ment] on a criminal charge" within the meaning of the statute. (§ 352.1, subd. (a).)

The Code of Civil Procedure does not define *imprisoned on a criminal charge*, however, and our research has not revealed any published California decision defining that term.[4] The term's

---

[4] At oral argument, Austin pointed us to *Elliott v. City of Union City* (9th Cir. 1994) 25 F.3d 800, in which the Ninth Circuit held that former section 352 tolled the limitations period when the plaintiff had been in continuous custody. We find *Elliott* unpersuasive. Because that decision predated the enactment of section 352.1, the *Elliott* court did not have the benefit of the legislative findings on this subject.

meaning, therefore, is a "question[] of statutory interpretation that we must consider de novo." (*People v. Prunty* (2015) 62 Cal.4th 59, 71.)[5]

### 4.1. Principles of Statutory Interpretation

As with any case involving statutory interpretation, our primary goal is to ascertain and effectuate the lawmakers' intent. (*People v. Park* (2013) 56 Cal.4th 782, 796.) To determine intent, we first examine the statutory language and give the words their ordinary meaning. (*Ibid*.) "Words and phrases are construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law … are to be construed according to such peculiar and appropriate meaning or definition." (Civ. Code, § 13; see *People v. Gonzales* (2017) 2 Cal.5th 858, 871 & fn. 12 [because term of art "must be understood as it is defined, not in its colloquial sense," courts must assume the Legislature knew the ramifications of its word choices]; *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 19–20 ["when [a] word has both a specific legal meaning and a more general sense in informal legal usage or in lay speech … lawmakers are presumed to have used the word in its specifically legal sense."].)

If statutory language is unambiguous, its plain meaning controls; if the statutory language is ambiguous, " ' "we may

---

[5]    Because this issue was not addressed by the parties in their original briefing, we requested and received supplemental briefing. In light of our holding, we do not address Medicis's contention that our opinion in an appeal concerning one of Austin's other lawyers (*Austin v. Swarth* (Sept. 1, 2017, B270071) [nonpub. opn.]), is collateral estoppel on this issue.

resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." [Citation.] Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute. [Citations.]' " (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 321.)

While on its face, *imprisoned* appears to refer to people incarcerated in state prison, Austin advances a different interpretation. *Imprisoned*, he argues, should be construed in its broader, colloquial sense to include people held in pretrial custody in the county jail. To be sure, some dictionaries define *imprisoned* as Austin suggests. Yet while "one definition of the term in Webster's Third New International Dictionary is 'to put in prison: confine in jail,' … the same dictionary defines 'prison' several ways, including as 'an institution for the imprisonment of persons convicted of major crimes or felonies: a penitentiary as distinguished from a reformatory, local jail, or detention home.' " (*League of Women Voters of California v. McPherson* (2006) 145 Cal.App.4th 1469, 1484 (*McPherson*).) And while dictionaries may sometimes be helpful, they are not dispositive. (*State of California v. Altus Finance* (2005) 36 Cal.4th 1284, 1295–1296 [to " ' "seek the meaning of a statute is not simply to look up dictionary definitions and then stitch together the results. Rather, it is to discern the sense of the statute, and therefore its words, *in the legal and broader culture*." ' "]; see *Pearson v. State Social Welfare Board* (1960) 54 Cal.2d 184, 194 [in determining meaning of a provision, examination "may well begin, but should not end, with a dictionary definition of a single word used therein"].)

We also note that other California courts have found ambiguity in the word *imprisoned*. In *McPherson*, for example, the court noted that the "term 'imprisonment' has no fixed meaning in practice. For example, Penal Code section 19 provides that a misdemeanor is 'punishable by imprisonment in the county jail not exceeding six months.' But it also has been held that serving a probationary period in the county jail does not amount to serving a term of imprisonment in a penal institution. [Citation.]" (*McPherson*, *supra*, 145 Cal.App.4th at p. 1484.)

To resolve this ambiguity, we turn to legislative history. Section 352.1 was enacted in 1994, but its precursor, section 352, was enacted in 1872 alongside California's civil death statutes to ameliorate the harsh results of those statutes. As we will explain, the current provision must be understood in that context.

### 4.2. Civil Death

Civil death is a legal status with roots in ancient Greece and English common law. "In ancient Greece, those criminals 'pronounced infamous' were unable to appear in court or vote in the assembly, to make public speeches, or serve in the army. … European lawmakers later developed the concept of 'civil death, which put an end to the person by destroying the basis of legal capacity, as did natural death by destroying physical existence.'" (Ewald, *"Civil Death": The Ideological Paradox of Criminal Disenfranchisement Law in the United States* (2002) 2002 Wis. L.Rev. 1045, 1059–1060 (Ewald, *Civil Death*).) A civil death sentence extinguished the civil, legal, and political rights of people convicted of certain offenses. Without those rights, convicts could not bring civil actions or perform any legal function. (Saunders, *Civil Death—A New Look at an Ancient Doctrine* (1970) 11 Wm. & Mary L.Rev. 988, 989, 992–994.)

17

Because civil death revoked the full spectrum of rights of people convicted of certain offenses, it was historically "limited to very serious crimes" and imposed "only upon judicial pronouncement in individual cases." (Ewald, *Civil Death*, *supra*, 2002 Wis. L.Rev. at p. 1061; see 4 Blackstone, Commentaries 373 [civil death applies only "when it is … clear beyond all dispute that the criminal is no longer fit to live upon the earth, but is to be exterminated as a monster and a bane to human society."].) In the United States, however, this distinction eroded in the years following the Civil War as federal constitutional rights began to constrain the activities of individual states. (Grady, *Civil Death is Different* (2013) 102 J. Crim. L. & Criminology 441, 447; see U.S. Const., 14th Amend. [equal citizenship rights regardless of race]; U.S. Const., 15th Amend. [universal male suffrage]; compare *Barron v. The Mayor and City Council of Baltimore* (1833) 32 U.S. 243, 247 [5th Amend. takings clause limited only federal power and did not apply to the states] with *Chicago, Burlington & R'D v. Chicago* (1897) 166 U.S. 226 [takings clause applied to states via 14th Amend.].) Many states, including California, began to impose forms of civil death broadly and automatically.

As codified in 1872, the California Penal Code provided that a "person sentenced to imprisonment in the State prison for life is thereafter deemed civilly dead." (Pen. Code, § 674, as enacted by Pen. Code of 1872.) Those sentenced to terms shorter than life received temporary, more limited forms of civil death. (Pen. Code, § 673, as enacted by Pen. Code of 1872 [a "sentence of imprisonment in a State prison for any term less than life suspends all the civil rights of the person so sentenced … during such imprisonment."].) That distinction was important. As the California Supreme Court explained, if "the convict be sentenced

for life, he becomes *civiliter mortuus*, or dead in law, in respect to his estate, as if he was dead in fact. If, however, he be sentenced for a term less than life, his civil rights are only suspended during the term" of imprisonment. (*Matter of Estate of Nerac* (1868) 35 Cal. 392, 396.)

While civil death had expanded beyond those criminals "no longer fit to live upon the earth" (4 Blackstone, Commentaries 373), given its serious consequences, even this modified version was reserved for felons sentenced to state prison. As the Attorney General explained in 1951: "Mere conviction of a crime and imprisonment alone do not result in a loss of civil rights, e.g., civil rights are not lost upon imprisonment in the county jail following the conviction of a misdemeanor. … [¶] … [¶] There must be a 'sentence of imprisonment in a State prison,' and the civil rights of the person so sentenced are suspended only 'during such imprisonment.' [¶] ... [¶] Thus, unless there is actual imprisonment in the State prison pursuant to the sentence there is no suspension of civil rights." (17 Ops.Cal.Atty.Gen. 34, 35 (1951) [construing Pen. Code, § 2600, which replaced the original civil death statute (Stats. 1941, ch. 106, § 15, p. 1091)]; see *Hayashi v. Lorenz* (1954) 42 Cal.2d 848, 852 ["California's civil death statutes are intended to apply only to persons convicted in the courts of this state and imprisoned in the prisons of this state."]; *People v. Banks* (1959) 53 Cal.2d 370 [civil death does not apply to probationers].)

### 4.3.   Former Section 352

Even as the new Penal Code stripped the rights of imprisoned felons, however, the new Code of Civil Procedure ameliorated its impact by tolling statutes of limitations for prison inmates. (§ 352, as enacted by Code Civ. Proc. of 1872.) As

19

enacted, section 352 provided that "[i]f a person entitled to bring an action … be at the time the cause of action accrued, either:" a minor, insane, a married woman, or "[i]mprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life … [t]he time of such disability is not a part of the time limited for the commencement of the action." (*Ibid.*; see § 328, as enacted by Code Civ. Proc. of 1872 [property actions].) After 1872, therefore, although prisoners were stripped of all civil rights during their incarceration—a legal disability that prevented them from bringing civil actions or appearing in court—they would get those rights back when they were released. (*Matter of Estate of Nerac*, *supra*, 35 Cal. at p. 396.)

Statutes of limitations are based on the assumption that a claimant will not delay his claim for an unreasonable time; that assumption does not apply where a person is denied access to courts. (*Estate of Caravas* (1952) 40 Cal.2d 33, 40.) Thus, as with minors, the insane, and married women, statutes of limitations were tolled for convicts barred from the civil courts. (*Grasso v. McDonough Power Equipment, Inc.* (1968) 264 Cal.App.2d 597, 600 [tolling raised "the possibility" that upon his release from custody, a convict could "realiz[e] redress for wrongs done to him"]; see *Brooks v. Mercy Hospital*, *supra*, 1 Cal.App.5th at p. 7 [applying *Grasso* to successor statute, section 352.1].)

Yet since statutory tolling existed to ameliorate statutorily imposed disabilities, it only applied to prisoners who *actually suffered* legal disabilities—felons sentenced to state prison. Thus, the tolling statute did not apply to county jail inmates. (See 15 Ops.Cal.Atty.Gen. 38, 39 (1950) ["The Legislature has not suspended the civil rights of a person convicted of a felony but sentenced to the county jail as a misdemeanant. Therefore, …

there are no civil rights to be restored."].) Nor did it apply to parolees. (See *Deutch v. Hoffman* (1985) 165 Cal.App.3d 152, 153–155 [tolling statute does not apply to parolees because the right to initiate civil actions was not among the pre-1976 restrictions to which they were subjected].)

### 4.4.   Section 352.1

Over the years, the civil death statutes were occasionally relaxed to allow for restoration of some rights on a case-by-case basis, but in general, automatic deprivation of prisoners' civil rights continued in California for more than 100 years. (See Stats. 1919, ch. 28, § 1, p. 34; Stats. 1941, ch. 489, §§ 1–2, pp. 1797–1798; Pen. Code, § 2600, added by Stats. 1941, ch. 106, § 15, p. 1091 ["A sentence of imprisonment in a State prison for any term less than life suspends all the civil rights of the person so sentenced … during such imprisonment."]; Stats. 1968, ch. 1402, § 1, p. 2763.) In 1968, however, the Legislature loosened restrictions on prisoners' civil rights and abolished civil death for prisoners serving life sentences. (Stats. 1968, ch. 1402, pp. 2763–2764.) Then, in 1975, the Legislature repealed the rest of the "ancient 'civil death' provision" and enacted the Inmates' Bill of Rights, which provided "that inmates may be deprived of civil rights only if necessary for the reasonable protection of the public and the reasonable security of the institution." (Assemblyman Alan Sieroty, Assem. Bill No. 1506 declaration of intent (1975–1976 Reg. Sess.) Sept. 20, 1978, author's chaptered bill file, ch. 1175; Stats. 1975, ch. 1175, § 3, pp. 2897–2898 [repealing and reenacting Pen. Code, §§ 2600, 2601].)

In so doing, the Legislature fundamentally changed this area of the law by reversing the state's default treatment of state prisoners' civil rights. Whereas in 1968, a "sentence of

imprisonment in a state prison for any term suspend[ed] all of the civil rights of the person so sentenced," *except* those explicitly exempted (Stats. 1968, ch. 1402, § 1, p. 2763), by 1975, a "person sentenced to imprisonment in a state prison [could], during any such period of confinement, be deprived of such rights, and *only such rights*, as is necessary in order to provide for the reasonable security of the institution in which he is confined and for the reasonable protection of the public." (Stats. 1975, ch. 1175, § 3, p. 2897, emphasis added [enacting Pen. Code, § 2600].) Lawmakers also specifically enumerated eight civil rights that could not be abridged—including the right to correspond confidentially with counsel and the right to initiate civil actions. (*Id.* at pp. 2897–2898 [enacting Pen. Code, § 2601].)

But though the new Penal Code provisions granted state prisoners the right to bring civil actions, lawmakers did not amend section 352, the tolling statute, until 20 years later when they removed prisoners from the list of the legally disabled in section 352 and enacted a new, less generous tolling provision in section 352.1. Why not amend the statute in 1975? Because as it applied to prisoners, former section 352 existed to solve the very specific problem of how to apply statutes of limitations to the civilly dead—and the Legislature had just abolished civil death. That is, to the extent lawmakers considered section 352, they apparently assumed that it would no longer apply. (See, e.g., Cal. Dep. Corrections, Enrolled Bill Rep. on Assem. Bill No. 1506 (1975–1976 Reg. Sess.) Sep. 19, 1975, p. 4 ["The right to initiate civil actions is double edged. On one hand the inmate may use them to harass the state, other governmental entities and private individuals. On the other hand, now the statute of limitations

22

does not run since the inmate cannot sue. If he has the right [to sue] presumably the statute would run."].)

There was precedent for such a belief. Married women, for example, were listed in section 352 for decades after California abolished coverture—the common-law rule that a wife's legal personality was merged with her husband's. (See, e.g., *Follansbee v. Benzenberg* (1954) 122 Cal.App.2d 466, 476 [noting that "hollow, debasing, and degrading philosophy, which has pervaded judicial thinking for years, has spent its course."].) Yet as late as 1968, the California Law Revision Commission found wives' continued presence in a list of the legally disabled so uncontroversial that it noted, "This vestigial remnant is of no significance since the abolition of coverture. [Citation.]" (Recommendation Relating to Sovereign Immunity, 9 Cal. Law Revision Com. Rep. (1968) p. 54, fn. 7.) That is, according to the Commission, there was no need to amend section 352 because it clearly no longer applied to married women. It appears the Legislature expected that tolling for prisoners would become obsolete the same way[6]—even if the federal courts continued to toll limitations periods for state prisoners indefinitely. (See, e.g., *May v. Enomoto* (9th Cir. 1980) 633 F.2d 164, 166–167.)

---

[6] Likewise, the analogous tolling provision for public entity lawsuits, last amended in 1970, *still* provides, "When a person is unable to commence the suit within the time prescribed in subdivision (b) because he has been sentenced to imprisonment in a state prison, the time limited for the commencement of such suit is extended to six months *after the date that the civil right to commence such action is restored to such person … .*" (Gov. Code, § 950.6, subd. (c), emphasis added.)

The history of section 352.1, which was enacted to fix the problem of indefinite tolling, supports this view. Senate Bill No. 1445 was drafted "to require prisoners to bring their actions against the state in a timely manner." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1445 (1993–1994 Reg. Sess.) Apr. 6, 1994.) The legislative reports explained that when the tolling "provisions were first enacted in 1872, inmates were barred from filing civil suits during their incarceration," but though there was "no longer any legal impediment for an inmate to file a civil action during his imprisonment, neither Section 328 nor 352 has been changed to reflect the change." (*Ibid*.) As discussed, civil death statutes and their related tolling provisions only applied to defendants convicted of felonies and sentenced to state prison. (See *McPherson*, *supra*, 145 Cal.App.4th at pp. 1474–1479 [reviewing history of felon disenfranchisement laws and concluding "the California Constitution does not disenfranchise persons confined in a local facility … or sentenced … to anything other than imprisonment in state prison."].) Accordingly, the legislative history materials mention only those inmates. (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1445 (1993–1994 Reg. Sess.) Mar. 15, 1994 [identifying key issue as: "Should a state prison inmate be required to file a civil cause of action within the applicable statutory limitations period without any tolling of the statute during the person's term of imprisonment?"].)

The legislative findings included in the statute make this focus explicit. They provide:

(a)  Since 1988, the number of civil lawsuits filed against the state *by inmates incarcerated with*

24

> *the Department of Corrections* has outpaced the increase in California's prison population.
>
> (b)  Civil lawsuits make up approximately 55 percent of all lawsuits brought against the state *by inmates incarcerated in California prisons.*
>
> …
>
> (f)  It is in the best interest of the state to curtail the number of frivolous lawsuits filed by persons *incarcerated with the Department of Corrections*.

(Stats. 1994, ch. 1083, § 1, pp. 6465–6466, emphasis added.)

In short, the Legislature was plainly focused on limiting the indefinite statutory tolling formerly granted to civilly dead state prison inmates. There is no indication the Legislature, in so doing, intended to *expand* tolling to local inmates in pretrial custody.[7] We hold, therefore, that a would-be plaintiff is "imprisoned on a criminal charge" within the meaning of section 352.1 if he or she is serving a term of imprisonment in the state prison.[8]

---

[7]  Certainly, as Austin argues, there are compelling policy reasons to support a different rule, and if the Legislature wishes to apply the tolling rules more broadly, it may do so. But it is up to the Legislature, and not the courts, to rewrite this statute—and until it does, we must apply section 352.1 as written.

[8]  In 2011, the Legislature enacted and amended the 2011 Realignment Legislation addressing public safety (Stats. 2011, ch. 15, § 1; Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 1 (the Realignment Act)). Under the Realignment Act, low-level felony offenders who have neither current nor prior convictions for serious or violent offenses, who are not required to register as sex offenders, and who are not subject to an enhancement for multiple felonies involving fraud or

Turning to the issue before us, Austin's first, second, third, fifth, sixth, and seventh causes of action accrued on September 22, 2009, and his fourth cause of action accrued on October 9, 2009. Since Austin alleges he was in pretrial custody in the Los Angeles County Jail during this period, he was not "imprisoned on a criminal charge" when his causes of action accrued, and section 352.1 does not apply.[9] Therefore, Austin had until October 9, 2012, to assert his claim for actual fraud and until September 22, 2010, to assert his remaining claims. Austin's complaint, which was filed on September 11, 2013, was untimely.

Because all of Austin's causes of action were time-barred, and he has not demonstrated on appeal that there is a reasonable possibility amendment would cure the problem, the court properly sustained Medicis's demurrer to the second amended complaint without leave to amend. (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318 [plaintiff has burden of demonstrating how complaint can be amended to state a cause of action].)

---

embezzlement, no longer serve their sentences in state prison. (See *People v. Scott* (2014) 58 Cal.4th 1415, 1426.) Instead, such offenders serve their sentences either entirely in county jail or partly in county jail and partly under the mandatory supervision of the county probation officer. (Pen. Code, § 1170, subds. (h)(2), (3), (5).) Because the issue is not before us, we do not consider whether statutes of limitations are tolled if a defendant's felony sentence is imposed under the Realignment Act.

[9] As discussed above, Austin has forfeited any claim that additional tolling provisions apply here.

## DISPOSITION

The judgment is affirmed. In the interest of justice, no costs are awarded on appeal.

## CERTIFIED FOR PUBLICATION

LAVIN, J.

WE CONCUR:


EDMON, P. J.


CURREY, J.*

---

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

27