Filed 5/19/21  Shevtsov v. The Cheesecake Factory CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| YEVGENYA SHEVTSOV et al., | B300116 |
| Plaintiffs and Appellants, | Los Angeles County Super. Ct. No. EC069222 |
| v. | |
| THE CHEESECAKE FACTORY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William D. Stewart, Judge. Reversed with directions.

Yevgenya Shevtsov and Tatyana Shevtsov, in pro. per., for Plaintiffs and Appellants.

Ogletree, Deakins, Nash, Smoak & Stewart, Amber L. Roller and J. Nicholas Marfori, for Defendant and Respondent.

# INTRODUCTION

When plaintiffs and appellants Tatyana Shevtsov and Yevgenya Shevtsov dined at the Cheesecake Factory on September 11, 2016, they were initially denied seating at one of several available booths. Eventually, they were given a booth in an out-of-the-way back corner of the restaurant. When Tatyana[1] spoke to the manager about the incident on September 20, 2016, she learned that the Cheesecake Factory has a policy of not allowing customers with wheelchairs to sit in booths, even if the wheelchair folds. Yevgenya uses a wheelchair. On September 19, 2018, the Shevtsovs sued defendant and respondent The Cheesecake Factory Restaurants, Inc. (Cheesecake Factory) claiming violation of the Unruh Civil Rights Act (Civ. Code,[2] §§ 51, 51.5) (Unruh Act). The trial court sustained the Cheesecake Factory's demurrer to the Shevtsovs' first amended complaint without leave to amend, holding that the claim had accrued on September 11, 2016, making it untimely under the Unruh Act's two-year statute of limitations.

On appeal, the Shevtsovs argue that their claim accrued on September 20, 2016, when they learned about the discrimination, not on September 11, 2016, when the discrimination occurred. They also argue that the relevant statute of limitations is three years, not two.[3] The Cheesecake Factory argues that the claim is time-barred under the two-year statute of limitations and, in any

---

[1] For clarity, we refer to the family members by their first names.

[2] All undesignated statutory references are to the Civil Code.

[3] The Shevtsovs also raise several procedural issues related to the demurrer, which we do not reach.

event, the demurrer was properly sustained because the Shevtsovs failed to state a claim. We conclude that the Shevtsovs could allege additional facts showing that their claim accrued on September 20, 2016, and their complaint was therefore timely under the two-year statute of limitations. We also conclude that the Shevtsovs stated a claim for relief under the Unruh Act. We therefore reverse.

## FACTS AND PROCEDURAL BACKGROUND

**1.      The Shevtsovs Visit the Cheesecake Factory**

On September 11, 2016, the Shevtsovs—mother Tatyana, father Vladimir, and daughter Yevgenya—visited the Cheesecake Factory in Glendale. Yevgenya was using a folding wheelchair. The family was seated in an inconvenient, noisy location, so they asked to be moved to a booth that appeared to be available. After speaking to someone, the hostess refused, claiming the booth "might" be reserved. When the family pointed out other empty booths, the hostess responded that they "might" be reserved as well. The Shevtsovs asked to speak to a manager, but no one appeared. After waiting for another 10 minutes or so, they decided to leave. At that point, another employee appeared and seated the family in a booth in a back corner of the restaurant.

On September 20, 2016, Tatyana spoke with the restaurant's manager about the visit. He told her that it was the restaurant's policy not to allow customers in wheelchairs to sit in booths, even if they used folding chairs. He also said that if they wanted to use a booth when visiting the restaurant with a disabled person in the future, they would need to call ahead and make a reservation. Tatyana later learned that the Cheesecake Factory doesn't take reservations.

3

## 2.     Complaint and Demurrer

Yevgenya and Tatyana filed a complaint on September 19, 2018.[4] The operative first amended complaint alleged intentional discrimination under the Unruh Act and the Americans with Disabilities Act. The Shevtsovs sought injunctive relief and damages. The Cheesecake Factory demurred to the first amended complaint, claiming it was untimely and failed to state a claim.

The court rejected the Cheesecake Factory's argument that the Shevtsovs had failed to state a claim but sustained the demurrer without leave to amend on statute of limitations grounds. The court held that the claim had accrued on September 11, 2016, the date of the discrimination, because the conversation on September 20, 2016, was not an independent injury. The court entered a judgment of dismissal, and the Shevtsovs filed a timely notice of appeal.

## DISCUSSION

The Shevtsovs contend the court erred in sustaining the Cheesecake Factory's demurrer to their Unruh Act claim without leave to amend. They argue that under the delayed discovery rule, their claim did not accrue until September 20, 2016, when they learned they had suffered intentional discrimination. They also argue that the statute of limitations for Unruh Act claims is three years, not two. The Cheesecake Factory contends that regardless of the statute of limitations, the Shevtsovs failed to state a claim upon which relief can be granted.

---

[4] Vladimir Shevtsov is not a plaintiff in this suit.

4

## 1.   Standard of Review

" 'When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Courts must also consider judicially noticed matters. (*Ibid*.) In addition, we give the complaint a reasonable interpretation, and read it in context. (*Ibid*.) If the trial court has sustained the demurrer, we determine whether the complaint states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. (*Ibid*.) If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. (*Ibid*.) The plaintiff has the burden of proving that an amendment would cure the defect. (*Ibid*.)' [Citation.] 'If a complaint is insufficient on any ground specified in the demurrer, the order sustaining the demurrer must be upheld even though the particular ground upon which the court sustained it may be untenable. [Citation.]' [Citation.]

"In light of these principles, the difficulties in demurring on statute of limitations grounds are clear: '(1) trial and appellate courts treat the demurrer as admitting all material facts properly pleaded and (2) resolution of the statute of limitations issue can involve questions of fact. Furthermore, when the relevant facts are not clear such that the cause of action might be, but is not necessarily, time-barred, the demurrer will be overruled. [Citation.] Thus, for a demurrer based on the statute of limitations to be sustained, the untimeliness of the lawsuit must

5

clearly and affirmatively appear on the face of the complaint and matters judicially noticed. [Citation.]' [Citations.]" (*Austin v. Medicis* (2018) 21 Cal.App.5th 577, 584–585 (*Austin*).)

## 2. Statute of Limitations

Because the Unruh Act lacks an explicit statute of limitations, courts interpreting the Act must borrow statutes of limitations from other laws. (*Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 753.) Most claims under the Act are subject to the two-year limitations period for personal injury claims. (Code Civ. Proc., § 335.1; *Gatto*, at pp. 754–760.)[5] But as the Shevtsovs note, when a claim is alleged, in part, under section 51, subdivision (f)—which, as relevant here, incorporates Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.—the statute of limitations may instead be the three-year period that applies to liabilities created by statute (Code Civ. Proc., § 338, subd. (a)). (*Gatto*, at p. 759; *Estate of Stern v. Tuscan Retreat, Inc.* (9th Cir. 2018) 725 Fed.Appx. 518, 526 [noting "[w]e have not decided the limitations period for Title III claims" in California, but "the only *conceivable* options" are two or three years].) We see no need to contribute to the ongoing discourse as to the appropriate statute of limitations because, as discussed below, we conclude the Shevtsovs could allege additional facts showing that the claim is timely even under the two-year period.

---

[5] *Gatto* held that the one-year limitations period for personal injury claims in former Code of Civil Procedure section 340, subdivision (3), applied. Since then, the Legislature has renumbered that statute to Code of Civil Procedure section 335.1 and changed the statute of limitations to two years.

### 3.  Accrual and the Discovery Rule

A " 'statute of limitations does not begin to run until the cause of action accrues, that is, " 'until the party owning it is entitled to begin and prosecute an action thereon.' " [Citation.]' [Citation.] Thus, to determine when the statute[ ] of limitations ended, we must first address when [it] began." (*Austin*, *supra*, 21 Cal.App.5th at pp. 587–588.) "Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' [Citations.]" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806–807 (*Fox*).)

"An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. [Citations.]" (*Fox*, *supra*, 35 Cal.4th at p. 807.) "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. [Citations.]" (*Ibid*.) "In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Id*. at p. 808.)

"[T]o rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.] In

assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' [Citation.]" (*Fox*, *supra*, 35 Cal.4th at p. 808.)

Although belated discovery is usually a question of fact, it may be decided as a matter of law when reasonable minds cannot differ. (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1320 (*E-Fab*).) "Thus, when an appeal is taken from a judgment of dismissal following the sustention of a demurrer, 'the issue is whether the trial court could determine as a matter of law that failure to discover was due to failure to investigate or to act without diligence.' [Citation.]" (*Ibid.*)

4. **The Shevtsovs can allege additional facts showing that their Unruh Act claim is timely.**

The Cheesecake Factory argues that the Shevtsovs' cause of action accrued on September 11, 2016, when the family was initially denied a booth then seated in an undesirable location. As they did not file this action until September 19, 2018, the complaint is time-barred. The Shevtsovs contend that their lawsuit is timely under the delayed discovery rule. Specifically, they assert that they did not know—and had no way to learn— that their ill-treatment was caused by discrimination rather than just bad service until September 20, 2016, when Tatyana spoke to the restaurant manager. This distinction matters because unlike claims under the ADA, the Unruh Act requires plaintiffs to prove intentional discrimination. (*Turner v. Association of American Medical Colleges* (2008) 167 Cal.App.4th 1401, 1407–1409; *Cohn v. Corinthian Colleges, Inc.* (2008) 169 Cal.App.4th 523, 528 [Unruh Act requires a showing of intentional discrimination]; *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 687 [violations of

8

section 51, subdivision (f), which incorporates the ADA, do not require proof of intentional discrimination to obtain statutory damages].)

Based on the allegations in the operative pleading, the Shevtsovs knew on September 11, 2016, that the Cheesecake Factory had treated them poorly. As such, under the Unruh Act, they were required to conduct a reasonable investigation to determine whether their poor treatment was the result of purposeful discrimination. (*Fox, supra*, 35 Cal.4th at pp. 808–809.) A nine-day delay does not appear to be unreasonable as a matter of law. (See *E-Fab, supra*, 153 Cal.App.4th at p. 1320 [reasonableness of delay typically a factual question].)

Even so, to support their theory of delayed discovery, the Shevtsovs were required to plead that, despite diligent investigation of the circumstances of their injury, they "could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." (*Fox, supra*, 35 Cal.4th at p. 809.) And the Cheesecake Factory insists that although the complaint alleges that Tatyana spoke to the manager on September 20, 2016, it does not specify what, if any, specific efforts the Shevtsovs undertook to uncover the purported discrimination in the week and a half before that call.

Be that as it may, if we find that an amendment to the complaint could cure that defect, we must conclude that the trial court abused its discretion by sustaining the demurrer without leave to amend. (*Austin, supra*, 21 Cal.App.5th at p. 584.) In their appellate briefs in this case, the Shevtsovs concede that the operative complaint doesn't specify when they first tried to contact the manager—but they allege that the September 20, 2016 conversation was not their first try; instead, it was the

manager's ultimate response to several messages Tatyana had left him earlier in the week when he was out sick. As such, it appears that the Shevtsovs may be able to cure the defect by amending their complaint to specify what actions they took between September 11 and 20, 2016, and to plead that, despite diligent investigation of the circumstances of their injury, they "could not have reasonably discovered … within the applicable statute of limitations period" that they suffered intentional discrimination. (*Fox, supra*, 35 Cal.4th at p. 809.)

## 5. The Shevtsovs have stated a claim for relief.

Enacted in 1959, the Unruh Act amended an 1897 version of section 51 that required places of public accommodation " 'to serve all customers on reasonable terms without discrimination and … to provide the kind of product or service reasonably to be expected from their economic role.' " (*In re Cox* (1970) 3 Cal.3d 205, 212.) The Legislature's goal in enacting the law was to ban all forms of arbitrary discrimination in public accommodations. (*Isbister v. Boys' Club of Santa Cruz* (1985) 40 Cal.3d 72, 75 ["The Act is this state's bulwark against arbitrary discrimination in places of public accommodation"].) Section 51, subdivision (b), states: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition … are entitled to the full *and equal* accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Italics added.) Subdivision (f), in turn, provides that any violation of the ADA also violates the Act.

The Cheesecake Factory contends that the Shevtsovs have not stated a claim for relief under the Unruh Act because they were neither denied service under section 51, subdivision (b), nor

10

denied a request for an accommodation under subdivision (f). (See Code Civ. Proc., § 430.10, subd. (e) [demurrer is appropriate where the "pleading does not state facts sufficient to constitute a cause of action."].) We disagree.

### 5.1. Failure to State a Claim Under Subdivision (b)

By failing to provide us with proper legal authority, the Cheesecake Factory has forfeited its claim that that it did not deny service to the Shevtsovs under subdivision (b) of the Unruh Act. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [failure to develop claim with reasoned legal argument and supporting authority forfeits the issue].) The Cheesecake Factory's two legal citations are to unpublished summary judgment orders from federal district courts. We are not bound by decisions of lower federal courts, even on federal questions. (*People v. Bradley* (1969) 1 Cal.3d 80, 86.) But even if we were inclined to treat the federal courts' interpretation of California *state law* as persuasive authority—which we are not—because the orders are unpublished, we may not even do that. (Cal. Rules of Court, rule 8.1115(a).) Regardless, both orders mention the Unruh Act only in passing, and neither order is relevant to the issue before us.[6]

---

[6] We note that even if the Cheesecake Factory had not forfeited the issue, we would reject the argument that a plaintiff can only state a claim under the Unruh Act if he or she has been wholly denied service. (See, e.g., *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 34–38 [sex-based price discounts at a bar and car wash were arbitrary discrimination under the Act].)

11

### 5.2. Failure to State a Claim Under Subdivision (f)

As discussed, because the Unruh Act incorporates the ADA, a violation of the ADA is also a violation of the Unruh Act. (§ 51, subd. (f).) To support its claim that the Shevtsovs were not denied a request for an accommodation under the ADA, the Cheesecake Factory cites only federal authority, much of which is unpublished. Here, however, we review the published cases for their persuasive value in interpreting a federal statute.

The Cheesecake Factory cites *O'Conner v. Scottsdale Healthcare Corp.* (D.Ariz. 2012) 871 F.Supp.2d 900 for the proposition that a mere delay in accommodation is not actionable under the ADA. In that case, the plaintiff's visit to her hospitalized mother was delayed because a hospital security guard wanted her to register her service dog before entering the building. Ultimately, however, a manager allowed the plaintiff to enter without registering the dog. The court held that the delay alone did not violate the ADA. But *O'Conner*, unlike this case, did not involve an explicitly discriminatory policy. And unlike the plaintiffs in this case, the plaintiff in *O'Conner* ultimately got exactly what she wanted.

Likewise, in *Skaff v. Meridien North America Beverly Hills, LLC* (9th Cir. 2007) 506 F.3d 832, the plaintiff was initially assigned a hotel room with an inaccessible shower. When he brought the mistake to the hotel's attention, staff "immediately corrected" it by assigning him to a room with a roll-in shower. (*Id.* at pp. 839–840.) As in *O'Conner*, although the *Skaff* plaintiff had to wait, he ultimately received exactly what he wanted. Here, however, the Shevtsovs allege not only that the Cheesecake Factory failed to seat them promptly but *also* that the delay was due to a discriminatory company policy *and* that after the delay,

they were treated materially worse than non-disabled customers when they were seated in an undesirable booth despite the availability of other, better booths.

In sum, we reject the Cheesecake Factory's insistence that the Shevtsovs are griping about having to wait 10 minutes. The question in this case is not whether the Cheesecake Factory accommodated the Shevtsovs quickly enough. Instead, the Shevtsovs' argument is that they were made to wait, *then* consigned to an undesirable booth because of a company policy of treating their disabled customers differently—and worse—than customers who are not disabled. When a company policy is at issue, the question under the ADA is whether the business's policy impacts the plaintiff's " 'full and equal enjoyment' " of the facility. (*Chapman v. Pier 1 Imports* (9th Cir. 2011) 631 F.3d 939, 947; *id.* at 945 ["The concept of 'discrimination' under the ADA does not extend only to obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with the disabled individuals' 'full and equal enjoyment' of places of public accommodation."].) Contrary to the Cheesecake Factory's implication, a business can discriminate even if it doesn't "completely preclude the plaintiff from entering or from using a facility in any way." (*Id.* at p. 947.)

We therefore conclude that the allegations in the operative complaint are sufficient to state a claim under the Unruh Act, section 51, subdivisions (b) and (f).

13

## DISPOSITION

The judgment is reversed. On remand, the court shall vacate its order sustaining the Cheesecake Factory's demurrer without leave to amend and shall allow the Shevtsovs an opportunity to amend their complaint consistent with the views expressed in this opinion. Tatyana Shevtsov and Yevgenya Shevtsov shall recover their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.