Filed 2/8/23  Esagoff v. 621 Rodeo Drive CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MOJGAN ESAGOFF et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> 621 RODEO DRIVE LLC et al., <br><br> Defendants and Respondents. | B314084 <br><br> Los Angeles County <br> Super. Ct. No. SC129395 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Abir Cohen Treyzon Salo, Boris Treyzon and Sara A. McClain for Plaintiffs and Appellants.

Law Offices of Saul Reiss, Saul Reiss and Fay Pugh for Defendants and Respondents.

————————————————

# INTRODUCTION

Under California law, when negligent excavation causes damage to a neighbor's property, the property owner and the contractor who performed the excavation are jointly liable for the damage. Plaintiffs and appellants Abbey and Mojgan Esagoff, individually and on behalf of the Abbey and Mojgan Esagoff Trust (collectively "the Esagoffs"), sued defendants and respondents for property damage allegedly caused by excavation of land that provides lateral support to the Esagoffs' property. Respondents are 621 Rodeo Drive LLC (621 Rodeo), a California limited liability company,[1] and its manager, Fred Bahari Moghadam.[2] The trial court sustained respondents' demurrer to the second amended complaint without leave to amend, finding that the Esagoffs had not alleged facts personally implicating respondents in the allegedly negligent conduct of the contractors, and entered a judgment of dismissal.

We conclude the Esagoffs have stated a claim against the property owner, 621 Rodeo, but have not established that

---

[1] A California limited liability company is a hybrid business entity formed under the California Revised Uniform Limited Liability Company Act (Corp. Code, § 17701.01 et seq.) consisting of at least one member who owns membership interests. (Corp. Code, § 17704.01, subd. (a); see generally 9 Witkin, Summary of Cal. Law (11th ed. 2017) Corporations, § 41, pp. 841–842.)

[2] Appellants also sued City Wall Builders, Inc. and City Wall Construction, Inc., the contractors that performed the excavation work. They are not parties to this appeal. We refer to them, collectively, as "the contractors."

Moghadam also owns the property.[3]  Nor have they demonstrated how they could amend their complaint to allege liability as to Moghadam.  We therefore affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

In 2002, the Esagoffs purchased property in Beverly Hills. In 2016, the adjoining lot was purchased by 621 Rodeo. Moghadam is the company's manager.  In June 2017, contractors hired by 621 Rodeo performed excavation work on the property.

The Esagoffs filed a complaint on June 8, 2018.  The operative second amended complaint, filed on March 6, 2020, alleged a single cause of action for negligence.  On August 6, 2020, respondents filed their operative first amended cross-complaint against the Esagoffs and the contractors.[4]

Moghadam and 621 Rodeo demurred, arguing the Esagoffs had failed to state a claim upon which relief could be granted. They contended that neither 621 Rodeo nor Moghadam had personally excavated the land, and they could not be held liable for the negligence of their contractors.

The court sustained the demurrer without leave to amend. The court concluded that the hirer of an independent contractor

---

[3]    The Esagoffs' first request for judicial notice, filed on December 14, 2021, is denied because there is no evidence the permit applications were judicially noticed in the court below.

[4]    The Esagoffs' second request for judicial notice, filed on May 11, 2022, of the first amended cross-complaint and the order dismissing the cross-complaint as to the Esagoffs, is granted. (Evid. Code, § 452, subd. (d).)  Discussion of the allegations in the cross-complaint is not necessary to this appeal.

is not liable for the negligence of its contractor or the contractor's employees, and the Esagoffs had not alleged facts supporting peculiar risk liability. The court also concluded that the Esagoffs had failed to state a claim for negligent hiring/supervision because they had not alleged facts to show that the contractors were Moghadam's employees.

The court entered a judgment of dismissal, and the Esagoffs filed a timely notice of appeal. On March 24, 2022, respondents requested dismissal with prejudice of their cross-complaint as to the Esagoffs only. The dismissal was entered on March 29, 2022.

## DISCUSSION

The Esagoffs contend they have stated a claim for negligent failure to provide lateral support during excavation.[5] Before deciding the merits of that issue, however, we first address our jurisdiction over this appeal.

### 1. Appellate Jurisdiction

In California, the right to appeal is statutory. (*Superior Wheeler Cake Corp. v. Superior Court* (1928) 203 Cal. 384, 386;

---

[5] During oral argument in this matter, respondents' counsel orally moved to augment the record with various summary judgment documents in which, he asserted, the Esagoffs conceded they were not proceeding on a lateral support theory. Counsel has not filed those documents with this court, however, and has offered no legitimate explanation for why he waited months to bring them to our attention in the middle of oral argument, with no advance notice to opposing counsel. As such, the motion to augment is denied as untimely.

4

accord, *Powers v. City of Richmond* (1995) 10 Cal.4th 85, 108.)
A civil appeal may only be taken from a final judgment, i.e.,
a judgment that disposes of all the causes of action between the
parties. (Code Civ. Proc., § 904.1, subd. (a)(1); see 9 Witkin, Cal.
Procedure (6th ed. 2022) Appeal, § 96, pp. 158–160 [collecting
cases]; *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304
[a "final judgment" is one that " ' "terminates the litigation
between the parties on the merits of the case and leaves nothing
to be done but to enforce by execution what has been
determined" ' "].) The Esagoffs appeal from the judgment of
dismissal entered after the court sustained respondents'
demurrer without leave to amend. Ordinarily, such a judgment
is appealable. (Code Civ. Proc., § 904.1, subd. (a); *Kong v. City of
Hawaiian Gardens Redevelopment Agency* (2002)
108 Cal.App.4th 1028, 1032, fn. 1.)

But here, respondents, by virtue of their cross-complaint,
remain in the case. As respondents point out, the cross-
complaint was dismissed only as to the Esagoffs—not as to the
contractors. Respondents do not develop the issue in their brief,
however, and only note it in passing in their response to the
Esagoffs' second request for judicial notice. Ordinarily, therefore,
we would treat the argument as forfeited. (See *Benach v. County
of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [failure to develop
claim with reasoned legal argument and supporting authority
forfeits the issue].) Nevertheless, because we have an
independent duty to raise questions involving our own
jurisdiction, we must address the question of appealability even if
we are unaided by relevant briefing. (See *Jennings v. Marralle*
(1994) 8 Cal.4th 121, 126; *Olson v. Cory* (1983) 35 Cal.3d 390,
398.)

5

We conclude the matter is appealable, as discussed below.

### 1.1. The Final Judgment Rule

A judgment is the final determination in the trial court of the rights of the parties in an action or proceeding. (Code Civ. Proc., § 577.) Code of Civil Procedure section 904.1, subdivision (a)(1), authorizes appeals "[f]rom a judgment, except an interlocutory judgment . . . ." Our courts have consistently held that this provision effectively codifies the common law "one final judgment rule." (See, e.g., *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697 (*Griset*); see also *Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, 803 [clarifying that the Legislature's elimination of "final" from the predecessor to Code Civ. Proc., § 904.1 (Code Civ. Proc., former § 963, subd. 1, which then stated appeals may be taken "[f]rom a final judgment"), did not alter the "final judgment rule" itself].)

A popular formulation of the rule defines a "final judgment" as one that "terminates the proceeding in the lower court by completely disposing of the matter in controversy." (*Henneberque v. City of Culver City* (1985) 172 Cal.App.3d 837, 841; see also *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 436 [" '[A]n appeal cannot be taken from a judgment that fails to complete the disposition of all the causes of action between the parties even if the causes of action disposed of by the judgment have been ordered to be tried separately, or may be characterized as "separate and independent" from those remaining' "]; *Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 645 ["optimal appellate review is achieved by allowing appeals only after the entire action is resolved in the trial court"].)

Multiple policy considerations underlie this rule. Piecemeal disposition of a matter by taking frequent trips to the Court of Appeal wastes judicial resources.  (See *Griset*, *supra*, 25 Cal.4th at p. 697.)  We are not referees to be consulted multiple times in a single litigation. And premature appeals produce uncertainty and delay in the trial court.  (See *Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 966–967 [reviewing policy considerations].) The record on appeal will also be better developed if a single appeal of the entire matter is taken.  (*Id*. at p. 967.)

### 1.2.   Cross-Complaints

"A complaint and cross-complaint are treated as independent actions for most purposes, except with respect to the requirement of one final judgment.  [Citation.]  'Where a complaint and cross-complaint involving the same parties have been filed, there is no final, appealable judgment until both have been resolved.  [Citation.]'  [Citation.]  'Judgment rendered on a complaint alone, unaccompanied by judgment on a pending cross-complaint, is not a final judgment, and appeal from it may be dismissed on motion.  [Citations.]'  [Citations.]  [¶]  Thus, a judgment which resolves a complaint but does not resolve a cross-complaint pending between the same parties, is not final and not appealable, even if the complaint has been fully adjudicated." (*Westamerica Bank v. MBG Industries, Inc*. (2007) 158 Cal.App.4th 109, 132, italics omitted.)

Nevertheless, "where the cross-complaint seeks separate and independent relief by or against *different parties*, there can be a final judgment on the complaint and another on the cross-complaint." (*City of Hanford v. Superior Court* (1989) 208 Cal.App.3d 580, 588, italics added.)  Here, the judgment of dismissal of the Esagoffs' complaint against respondents and

respondents' dismissal of their cross-complaint against the Esagoffs, taken together, resolved the issues between them. As such, there is a final judgment in this case notwithstanding both parties' ongoing suits against the contractors.

### 1.3. Exception for Multiparty Cases

To the extent respondents suggest otherwise, we disagree. Although our Supreme Court in *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757 (*Baycol Cases*) reiterated that the "final judgment rule's deep common law and statutory roots and the substantial policy considerations underlying it" demand strict application of the rule and a reluctance to create exceptions, it also observed that there are two venerable, accepted "exceptions" to the final judgment rule.

The first exception permits an appeal of an "order . . . against a party in a collateral proceeding growing out of the action." (*Sjoberg v. Hastorf* (1948) 33 Cal.2d 116, 119.) This exception, known as the "collateral order doctrine," applies if the issue underlying the order seeking to be appealed "is truly collateral in that it is 'distinct and severable' from the subject matter of the underlying litigation." (*Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1016.) The order seeking to be appealed must also "direct[ ] payment of money or performance of an act." (*Id.* at p. 1015; see also *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 297–298 [grouping these requirements together under the heading of the *Sjoberg* test]; but see *Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 899 [noting a split of authority over whether an appealable collateral order must always involve payment of money or performance of an act].) That exception is not relevant here.

8

The second exception arises in multiparty cases like this one. Frequently called the "final as to a party" exception, it permits an appeal from a judgment that leaves no issue remaining to be decided as to one party. A leading practice guide provides the following illustration: "[I]n a single plaintiff's suit against two defendants (D1 and D2), a judgment or order resolving all issues between plaintiff and D1 is immediately appealable even though the action is still pending against D2." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2021) ¶ 2:91, pp. 2-66 to 2-67.)

This illustration supports the appealability of the trial court's judgment of dismissal in respondents' favor. The Esagoffs sued respondents and the contractors; respondents cross-complained against the Esagoffs and the contractors; the order under review dismissed respondents; the cross-complaint against the Esagoffs was dismissed as well. Although the Esagoffs and respondents both have outstanding issues remaining as to the contractors, they do not have any remaining issues as to each other. But, the "final as to a party" exception is not automatically applicable every time fewer than all parties are dismissed from an action.

Witkin summarizes the "final as to a party" limitation as follows: "It is well settled that where parties have distinct interests, there can be a separate, final, and appealable judgment for each." (9 Witkin, Cal. Procedure, *supra*, § 109, p. 174.) "The ['final as to a party'] exception only applies . . . where the interests of the otherwise uninvolved party are separate and distinct from the interests of parties whose rights have not been finally determined." (*Fleuret v. Hale Constr. Co.* (1970) 12 Cal.App.3d 227, 230.)

Recent cases do not explain this "distinct interests" prerequisite for applying the "final as to a party" exception. Instead, they point to a pair of Supreme Court opinions from the last century: *Howe v. Key System Transit Co.* (1926) 198 Cal. 525 (*Howe*) and *Rocca v. Steinmetz* (1922) 189 Cal. 426 (*Rocca*). (See, e.g., *Baycol Cases*, *supra*, 51 Cal.4th at p. 759 [citing *Rocca* and *Howe* as the source of the "final as to a party" exception].) Because our research has not revealed an explanation of the "distinct interests" prerequisite to the "final as to a party" exception, we briefly examine these leading cases to see why this exception was created in the first place.

In *Howe*, *supra*, 198 Cal. 525, railroad passengers who had been injured in a train collision sued the railroad and multiple railroad personnel in a single action. The individual defendants cross-complained against the railroad, attempting to shift liability onto their employer. The trial court dismissed the cross-complaints, and the individual defendants appealed. Although the primary action between the injured passengers and the railroad remained pending after dismissal of the cross-complaints, the Supreme Court held that the individual defendants could nevertheless appeal dismissal of their cross-complaints. It reasoned: "The circumstance that a particular judgment may not be binding upon all the parties to the action does not prevent it from being a final judgment within the code provisions relating to appeals. [Citation.] In the present case, the issues tendered by the cross-complaints, which were stricken from the files, are entirely severable from the issues made by the complaints and answers." (*Id.* at p. 533.) Thus, in *Howe*, the court was comfortable lifting the "final judgment" rule that would

10

otherwise bar interlocutory appellate review because the "issues" underlying the claims were "severable."

Next, in *Rocca*, *supra*, 189 Cal. 426, a father and son were sued as joint tortfeasors when the car the son was driving was involved in an accident that killed a passenger. The plaintiff sued the father on a negligent-entrustment theory and sued the son for simple negligence. The trial court dismissed the case against the father, and the case against the son went to trial. The plaintiff appealed dismissal of its case against the father even though the case against the son remained pending. The appeal was dismissed because no final judgment had yet been rendered in the case as a whole. The Supreme Court reversed. The court explained: "The fact that the defendant [father] is sued as the owner of the automobile and [the son] is sued as the perpetrator of the tort does not make either of them any the less liable to have a judgment rendered against him while the action is allowed to continue as to the other defendant." (*Id*. at p. 428.)

Further motivating the court in *Rocca* was a policy consideration applicable here: "[T]o hold the [plaintiff] bound to wait until the final judgment against the other party before taking an appeal from the judgment against the first party already rendered is wholly unreasonable." (*Rocca*, *supra*, 189 Cal. at p. 428.) Parties to a judgment rendered in multiparty cases should be given the finality of appellate review unless there is a compelling reason to defer review until the entire action has been disposed of. Indeed, when our Supreme Court cited *Rocca* in *Baycol Cases*, it cited this principle as "[u]nderlying this original settled rule" (*Baycol Cases*, *supra*, 51 Cal.4th at p. 759), viz., the "final as to a party exception."

11

Thus, the final judgment rule isn't always clear. On the one hand, we must be cognizant of the substantial policy considerations underlying the rule, such as reducing uncertainty in the underlying litigation, avoiding (and deterring) piecemeal litigation, and conserving the resources of the appellate courts. Yet we must grant appellate review when the conditions for an exception have been met lest we arbitrarily delay an appeal until final judgment has been rendered as to every party. (See Shah, *Increase Access to the Appellate Courts: A Critical Look at Modernizing the Final Judgment Rule* (2014) 11 Seton Hall Cir. Rev. 40, 58 ["[T]he final judgment rule is a rule, designed to balance the underlying competing policy interests of finality—the inconvenience and costs of piecemeal review on the one hand, and the danger of denying justice by delaying appellate review on the other"].)

Here, respondents have been dismissed from the Esagoffs' action. Paraphrasing the Supreme Court in *Rocca*, now "[n]o other judgment can be entered against" respondents, as they "will go free if the case goes no further against" them. (*Rocca*, *supra*, 189 Cal. at p. 428.) That would seem to authorize the instant appeal. Likewise, unless there is a compelling reason to defer review, it is "wholly unreasonable" for us to force the parties here to "wait until the final judgment against the" contractors "before taking an appeal from the judgment . . . already rendered." (*Ibid.*)

The only question remaining is to determine whether respondents and the contractors have the requisite "distinct interests" our cases insist must apply before this exception is met. Although our cases do not explain this "distinct interests" requirement, we are not wholly without guidance. There is a

12

class of cases in which the interests between a dismissed and remaining defendant are never distinct as a matter of law: those against sureties and the principal obligor.

The leading case is *Call v. Alcan Pacific Co.* (1967) 251 Cal.App.2d 442, in which the plaintiff was a subcontractor who agreed to perform drywall work on a construction project. The subcontractor walked away with the job unfinished, and the general contractor threatened suit. The subcontractor responded by filing for an accounting and injunctive relief against the general contractor. The general contractor cross-complained against the subcontractor for breach of contract and named an insurance company who was surety on the subcontractor's performance bond as an additional defendant. The trial court entered judgment in favor of the surety insurance company, and, several months later, entered judgment in favor of the principal subcontractor. The general contractor appealed dismissal of its case against the surety and the subcontractor seriatim.

The Court of Appeal considered whether the "exception [to the final judgment rule] where several parties have distinct interests" applied where a surety was dismissed before its principal. (*Call v. Alcan Pacific Co.*, *supra*, 251 Cal.App.2d at p. 449.) It found the exception did not apply because the general contractor's suits against the subcontractor and its surety were suits against parties who had "a *unity of interest* between them [such] that a judgment in favor of the [surety] alone is not a final judgment from which an appeal lies." (*Ibid.*, italics added; see also *Fleuret v. Hale Constr. Co.*, *supra*, 12 Cal.App.3d at p. 230 [also a surety case, holding: "The ('final as to a party') exception only applies . . . where the interests of the otherwise uninvolved

13

party are separate and distinct from the interests of parties whose rights have not been finally determined"].)

To better determine the impact of these surety cases upon the instant appeal, we review what a surety is and why its interests overlap with those of its principal obligor. The Civil Code defines a "surety" as "one who promises to answer for the debt, default, or miscarriage of another." (Civ. Code,[6] § 2787.) Moreover, if the principal obligor is found liable to a third party, the surety "is liable to the creditor immediately upon the default of the principal, and without demand or notice." (§ 2807.)

Neither of these features of suretyship is present in the instant case. If the contractors lose to the Esagoffs, respondents are not automatically liable for the resulting judgment. Likewise, the Esagoffs have not adduced any evidence of an agreement between respondents and the contractors that would make the respondents responsible for the contractors' debts and liabilities. Respondents and the contractors thus do not have a "unity of interest" that would prevent application of the "final as to a party" exception and that would delay appellate review until the entire action is resolved.

Accordingly, we conclude we have jurisdiction over this matter under the "final as to a party" exception and turn to the merits of the appeal.

## 2. Standard of Review

" 'When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied

---

[6]     All undesignated statutory references are to the Civil Code.

14

factual allegations.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)
Courts must also consider judicially noticed matters.  (*Ibid.*)  In
addition, we give the complaint a reasonable interpretation, and
read it in context.  (*Ibid.*)  If the trial court has sustained the
demurrer, we determine whether the complaint states facts
sufficient to state a cause of action.  If the court sustained the
demurrer without leave to amend, as here, we must decide
whether there is a reasonable possibility the plaintiff could cure
the defect with an amendment.  (*Ibid.*)  If we find that an
amendment could cure the defect, we conclude that the trial court
abused its discretion and we reverse; if not, no abuse of discretion
has occurred.  (*Ibid.*)  The plaintiff has the burden of proving that
an amendment would cure the defect.  (*Ibid.*)'  [Citation.]  'If a
complaint is insufficient on any ground specified in a demurrer,
the order sustaining the demurrer must be upheld even though
the particular ground upon which the court sustained it may be
untenable.' "  (*Austin v. Medicis* (2018) 21 Cal.App.5th 577, 584.)

### 3.    The Esagoffs have stated a claim for negligent denial of lateral support by the property owner.

Although a landowner may make proper and usual
excavations to his property, it must be done using ordinary care
and skill.  (§ 832.)  Where a contractor performs the work, the
contractor and landowner are jointly liable for any negligence in
the excavation that proximately causes damage to an adjoining
landowner.  (*Wharam v. Investment Underwriters* (1943)
58 Cal.App.2d 346, 349–351 (*Wharam*).)  The Esagoffs contend
they stated a claim for negligent denial of lateral support against
the owner of the adjoining property.  We agree.

### 3.1. Common Law Rule

At common law, a landowner had a right to have his land, in its natural state, supported by the adjoining land. (6 Miller & Starr, Cal. Real Estate (4th ed. 2022) § 17:19.) An adjoining landowner who excavated his property was strictly liable for collapse or other damage to his neighbor's land, regardless of whether he exercised due care, because the liability was for invasion of the damaged owner's property rights. (*Ibid.*) Strict liability only applied to the land in its natural condition, without the added weight of buildings or other improvements. (*Ibid.*; *Wharam, supra*, 58 Cal.App.2d at p. 349.) But if the excavator acted negligently, he would be liable for damage to the improvements as well. (*Green v. Berge* (1894) 105 Cal. 52, 58.)

### 3.2. Section 832

Section 832 modified the common law rule by eliminating absolute liability in specified circumstances. (*Holtz v. Superior Court* (1970) 3 Cal.3d 296, 301, fn. 3 ["At common law a coterminous owner was strictly liable for damages resulting from the withdrawal of lateral support of land in its natural, unimproved state, but section 832 modified that rule by providing that 'lateral support' liability for damage to both land and improvements would generally result only if the excavator were negligent. (Civ. Code, § 832, subd. 2; Comment (1931) 20 Cal.L.Rev. 62, 63)"].)

The statute reaffirms the right of landowners to the lateral support of the adjoining land and the right of an adjacent owner to "make proper and usual excavations on the same for purposes of construction or improvement" under the conditions in the section. (§ 832 ["Each coterminous owner is entitled to the lateral

16

and subjacent support which his land receives from the adjoining land"].) Those conditions include giving notice of the excavation to the adjoining owner (*id.*, subd. 1), using ordinary care and skill in excavating (*id.*, subd. 2), and taking reasonable precautions to sustain the adjoining land (*id.*, subds. 2, 3). In addition, if the depth of the excavation exceeds nine feet, and the depth of the foundation or wall of an adjoining building equals this depth, the excavating owner has substantial obligations to protect the adjoining property from damage. (*Id.*, subd. 4.)

The statute did not change the rule where the excavator acts negligently, however. Under section 832, a coterminous landowner remains jointly liable with a negligent excavating contractor. (*Wharam, supra*, 58 Cal.App.2d at p. 351, citing *Aston v. Nolan* (1883) 63 Cal. 269, 270; *Green v. Berge, supra*, 105 Cal. at pp. 58–59.) Thus, the statute provides that under certain circumstances, a landowner is permitted "to excavate, freed from the absolute common law right of lateral support in his neighbor, provided certain conditions in the code section are complied with, and *always provided* that negligence of the excavator is not the proximate cause of damage to the property of the adjoining land owner." (*Wharam*, at p. 349, italics added.)

### 3.3. Elements of Negligence

The elements of negligence are: (1) duty of care, (2) breach, (3) causation, and (4) damages. (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 318.)

As discussed, landowners and their contractors have a joint duty to use reasonable care when excavating to maintain lateral support for their neighbors. The Esagoffs alleged that 621 Rodeo owns the property adjoining theirs. They also alleged that 621 Rodeo retained the contractors to excavate the property, that the

17

contractors did so negligently, and that in so doing, the contractors damaged improvements to the Esagoffs' land.  Taken together, these allegations are sufficient to state a claim against 621 Rodeo for negligent failure to provide lateral support.

4. **The Esagoffs have not established that they can amend the complaint to state a claim against Moghadam.**

Although the Esagoffs have stated a claim for negligence against property owner 621 Rodeo, that claim does not extend to Moghadam.  Moghadam does not own the property; he is the manager of 621 Rodeo.  And, while the Esagoffs claim Moghadam owed them a duty of care as a "reputed owner," they offer no authority for the proposition that the rules applying liability to landowners extend to "reputed" property owners, however the Esagoffs are defining that term.

Nor have the Esagoffs presented any theory under which Moghadam may be liable as a non-owner.  For example, they propose to amend the complaint to assert strict liability for failure to provide the required notice under section 832.  But they present no authority—or argument—for the premise that section 832's reference to a property "owner" can be construed to include the manager of an LLC.  (See § 832.)

To the extent the Esagoffs seek to assert liability against Moghadam as a supervisor rather than an owner, they neither develop the argument nor allege facts demonstrating that Moghadam had reason to believe the contractors were incompetent.  (See *Federico v. Superior Court* (1997) 59 Cal.App.4th 1207, 1213–1214 [elements of negligent hiring/supervision are:  (1) hiring and supervision of an employee; (2) the employee is incompetent or unfit; (3) the employer has

18

reason to believe undue risk of harm would exist because of the employment; and (4) harm occurs].)

In short, the Esagoffs have not met their burden of demonstrating a reasonable probability that by amending their complaint a third time, they could cure the defect as to Moghadam.

**5.    We need not decide whether the peculiar risk doctrine applies to property damage.**

"At common law, a person who hired an independent contractor generally was not liable to third parties for injuries caused by the contractor's negligence in performing the work. [Citations.]  Central to this rule of nonliability was the recognition that a person who hired an independent contractor had ' "no right of control as to the mode of doing the work contracted for." '  [Citations.]  The reasoning was that the work performed was the enterprise of the contractor, who, as a matter of business convenience, would be better able than the person employing the contractor to absorb accident losses incurred in the course of the contracted work.  This could be done, for instance, by indirectly including the cost of safety precautions and insurance coverage in the contract price.  [Citations.]

"Over time, the courts have, for policy reasons, created so many exceptions to this general rule of nonliability that ' " 'the rule is now primarily important as a preamble to the catalog of its exceptions.' " '  [Citation]; Rest.2d Torts, §§ 410–429 and § 409, com. b, at p. 370 [describing the nonliability rule as ' "general" only in the sense that it is applied where no good reason is found for departing from it'].)"  (*Privette v. Superior Court* (1993) 5 Cal.4th 689, 693 (*Privette*).)

19

One exception to the general rule that owners are not responsible for the negligence of their contractors pertains to contracted work that poses some inherent risk of injury to others. This exception is commonly referred to as the doctrine of peculiar risk. (*Privette*, *supra*, 5 Cal.4th at p. 693.) Yet though the parties spill much ink on the matter, they have not persuaded us that the peculiar risk doctrine is relevant to this case.[7]

The peculiar risk doctrine applies when the person who hires an independent contractor knows or should know that the contractor's work is likely to create a peculiar risk of physical harm to others unless special precautions are taken. (*Privette, supra*, 5 Cal.4th at p. 695.) One purpose of the doctrine is "to ensure that innocent third parties injured by the negligence of an independent contractor hired by a landowner to do inherently dangerous work on the land would not have to depend on the contractor's solvency in order to receive compensation for the injuries." (*Id*. at p. 694.) Another purpose is to promote workplace safety by spreading the risk of loss to the person who primarily benefited from the hired work. (*Ibid*.)

But the peculiar risk doctrine is primarily a personal-injury rule. Neither party has cited any authority in which the doctrine was applied to cases involving property damage—and our research has revealed none. For example, construction projects to which the peculiar risk doctrine has been applied include cement work on a 20-foot-high bridge undertaken without

---

[7]     As discussed above, negligent excavation is also a longstanding exception to the general rule that property owners are not liable for the negligence of their contractors. (See, e.g., *Green v. Berge, supra*, 105 Cal. at pp. 58–59.)

scaffolding or a railing to keep the worker from falling off (*Fonseca v. County of Orange* (1972) 28 Cal.App.3d 361), erecting a 30-foot steel column for a water tower without safety equipment to keep the worker from falling off (*Stilson v. Moulton–Niguel Water Dist.* (1971) 21 Cal.App.3d 928), and building a bridge over high-voltage wires, causing injury to a worker whose crane touched a wire (*Walker v. Capistrano Saddle Club* (1970) 12 Cal.App.3d 894).

In *Hughes v. Atlantic Pacific Construction Co.* (1987) 194 Cal.App.3d 987, 998, the court emphasized that the doctrine applies only when the risk is "something other than an ordinary and customary danger which may arise in the course of the work or of normal human activity." In *Hughes*, therefore, the doctrine did not apply even though "the building plans envisioned a seismic joint of over 24-1/2 inches in width, running the length of the fifth floor of the west and central towers of this high rise project." (*Id.* at p. 999.) Noting that "seismic joints are quite common in earthquake-prone California," the court held the construction project that caused injury to the subcontractor's employee did not pose a peculiar risk and did not come within the ambit of the doctrine. (*Id.* at pp. 994, 1000.)

In any event, because the lateral support doctrine is dispositive here, we need not, and do not, address whether the peculiar risk doctrine may apply to damage to property as well as people—and, if so, whether it applies in this case.

## DISPOSITION

The judgment is affirmed as to Moghadam.  The judgment is reversed as to 621 Rodeo and the matter is remanded to the trial court with directions to vacate its order sustaining 621 Rodeo's demurrer to the second amended complaint without leave to amend and to enter a new order overruling the demurrer.

Appellants shall recover their costs on appeal.


                                                              HARUTUNIAN, J.*

We Concur:



          GRIMES, Acting P. J.



          WILEY, J.

---

\*          Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.